## HORNELL ICE & COLD STORAGE CO. v. UNITED STATES.

No. 327.

District Court, W. D. New York.

March 25, 1940.

Franklin R. Brown, of Buffalo, N. Y. (Spieth, Taggart, Spring & Annat, of Cleveland, Ohio, of counsel), for plaintiff.

George L. Grobe, U. S. Atty., of Buffalo, N. Y., Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Paul S. McMahon, Sp. Assts. to Atty. Gen., for defendant.

KNIGHT, District Judge.

Plaintiff sues to recover capital stock taxes aggregating $3,509 paid by it for the taxable years 1933, 1934, and 1935. Defendant moves to dismiss the complaint upon five separate grounds. The only one now urged is that the complaint fails to state a valid cause of action. The taxes aforesaid were paid for the taxable year ending June 30, 1933, pursuant to Sections 215 and 216 of the National Industrial Recovery Act, 48 Stat. 207, 208, and taxes paid for the succeeding years were paid pursuant to the provisions of Sections 701 and 702 of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, pages 787–789.

The alleged basis for recovery is that Sections 215 and 216 of the National Industrial Recovery Act, 48 Stat. 207, 208, and Sections 701 and 702 of the Revenue Act of 1934 are violative of the due process clause of the Fifth Amendment to the Constitution, and also of Article I, Section 1, of the Constitution, because they unlawfully delegate legislative power to private persons.

Whether the complaint alleges sufficient facts showing a basis for challenging the constitutionality of the aforementioned statutes is to be first determined. The complaint alleges the payment of the aforesaid taxes for the several years in question, the making of claims for the refund thereof, and the denial of the claims by the Commissioner of Internal Revenue. It includes, as a part thereof, the claims which set forth the basis therefor. It alleges that these taxes were wrongfully and illegally collected and are refundable and owing the plaintiff. The proceedings taken were pursuant to 26 U.S.C.A.Int.Rev. Code § 3772.

The taxpayer must show specific injury and how his constitutional rights are invaded (W. C. Peacock & Co. v. Pratt, 9 Cir., 121 F. 772; First National Bank v. Louisiana Tax Com'n, 289 U.S. 60, 53 S. Ct. 511, 77 L.Ed. 1030, 87 A.L.R. 840; United States v. Jefferson Electric Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859) and the facts relied upon to rebut the presumption of constitutionality. Ætna Insurance Co. v. Hyde, 275 U.S. 440, 48 S. Ct. 174, 72 L.Ed. 357; Hegeman Farms Corp. v. Baldwin, 293 U.S. 163, 55 S.Ct. 7, 79 L.Ed. 259; O'Gorman & Young v. Hartford Ins. Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324, 72 A.L.R. 1163. It is believed that the complaint herein is sufficient in this respect. The above-cited cases differ from the instant one in that they fail to allege facts showing specific injury and a constitutional right is taken away. Particularly illustrative of this is the case of Ætna Insurance Co. v. Hyde, supra, wherein an attack on the constitutionality of a statute was based upon the alleged confiscation of property. The complaint there failed to disclose upon its face facts showing that the rates were confiscatory as to the plaintiff.

Sections 215 and 701 impose an annual capital stock tax on the value of the capital stock as declared by the assessed corporation, and Sections 216 and 702 impose an excess profits tax "equivalent to 5 per centum of such portion of its net income for such income-tax taxable year as is in excess of 12½ per centum of the adjusted declared value of its capital stock."

The capital stock provisions are to be construed in conjunction with the excess tax provisions. The opinion in Haggar Co. v. Helvering, 60 S.Ct. 337, 338, 84 L.Ed. —, decided January 2, 1940, clearly supports this view. Together with other expressions to the same effect, we there find this statement: "Sections 215 and 216 of the National Recovery Act impose interrelated taxes on domestic corporations. * * * Because of the method of computation, increase or decrease in the declared value of capital [stock], and of the corresponding tax, produces, as the case may be, a decrease or an increase in the tax on excess profits." This was the intent of Congress as shown by the reports of its committees. (House Report, January 14, 1938, 75th Congress p. 75; Senate Report 114, 73d Congress, 1st Session, p. 6.)

The capital stock provisions do not by express words fix any basis of "value", actual, intrinsic, fair market or other kind. The purpose of Congress as shown by its committees' reports was to compel the taxpayer to declare a fair value, which was the basis upon which capital stock was assessed by the Revenue Acts of 1916, 1918, 1921 and 1924, 40 Stat. 1057, 42 Stat. 227, 43 Stat. 253. The taxpayer was to be penalized by the excess profits provisions to accomplish this. While the taxpayer "is thus left free to declare any value of capital stock for its first taxable year which it may elect," the practical effect is to bring about a "fair valuation." The due process clause of the Fifth Amendment requires that there be uniform operation of the tax upon all subject to it. Willoughby on the Constitution of the United States. Reading these statutes together, the effect is to place the taxpayer on a basis comparable with that of other stock corporations. This results whatever the basis of the stock value is. The items of gains and losses to be added or deducted from the declared value of the first taxable year are such as are fairly representative of the usual gains and losses of corporations. Assuming that the provisions of these statutes are constitutional in so far as the tax for the first year is concerned, it follows that the acts are constitutional in so far as the subsequent years are concerned.

It is urged that these statutes are so "arbitrary" and "capricious" that they violate the due process clause of the Constitution. Obviously statutes may be unconstitutional for those reasons. Where, as here, the taxpayer places its own value on its own stock, and ultimately pays on a basis comparable with like corporations, there could be no "arbitrary" or "capricious" taxation. Of course, we are not concerned with the question of whether the tax imposed is excessive if applicable alike to all taxpayers of the same class. The measure of the tax is for Congress. Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312. Nichols v. Coolidge, 274 U.S. 531; Blodgett v. Holden, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206, and Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772; Untermyer v. Anderson Co., 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; cited by plaintiff, each relate to the fixation of the time of the application of a tax, and in no way to the basis of a tax.

The claim that these statutes are so "indefinite" as to be unconstitutional has been sufficiently hereinbefore answered. One is not required to guess at their meaning. YuCong Eng v. Trinidad, 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed. 1059; Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. Neither are the statutes "discriminatory", since the result of the two acts when construed together is to effect comparably equal assessments on like corporations.

The apparent purpose in making these unusual methods for assessments was to relieve the government from the monumental task of valuing the stock. Of itself this is not material here, but in so doing Congress did not unlawfully delegate legislative power to private persons in violation of Article I, Section 1 of the Constitution. Congress has fixed the method by which the assessment is made and has made its application uniform. In Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 873, 80 L.Ed. 1160, cited by plaintiff, Congress sought to permit a certain group of a certain class to fix minimum hours of labor. The court there said the act delegated "to private persons whose interests may be and often are adverse to the interests of others in the same business." The statutes are not comparable.

These statutes have been construed by the courts in numerous cases. So far as I am informed, upon the specific point raised here, these decisions are unanimously to the effect that the statutes are

constitutional: Stromberg-Carlson Mfg. Co. v. McGowan, and other cases, D.C.W. D.N.Y., decided March 4, 1940, Burke, D. J., 32 F.Supp. 101; Allied Agents, Inc. v. United States, Ct.Cl., 26 F.Supp. 98, certiorari denied October 9, 1939, 60 S.Ct. 72, 84 L.Ed. ——; Chicago Telephone Supply Co. v. United States, Ct.Cl., 23 F.Supp. 471, certiorari denied, 305 U.S. 628, 59 S.Ct. 92, 83 L. Ed. 402; Rosoff Tunnel Corp. v. Higgins, D.C., 28 F.Supp. 880; Midvale Paper Board Co., Inc. v. United States, D.C.S.D.N.Y., decided February 20, 1940, 31 F.Supp. 851; Haggar Co. v. Helvering, supra, and Oertel Co. v. Glenn, D.C., 13 F.Supp. 651, involved only the question of the timeliness of an amendment to the valuation. Scaife & Sons Co. v. Driscoll, 3 Cir., 94 F.2d 664, certiorari denied, 305 U.S. 603, 59 S.Ct. 63, 83 L.Ed. 383, involved only the question of the right to maintain an action to enjoin a collector for refusing to accept an amended capital stock return. While denials of certiorari are not to be taken as approval of the lower court decisions (Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 51 S.Ct. 498, 75 L.Ed. 1142), attention in passing may be called to the fact that certiorari was denied by the Supreme Court both in the case of Allied Agents, Inc. v. United States and Chicago Telephone Supply Co. v. United States, supra, and granted in Haggar Co. v. Commissioner. Certiorari was granted in the Haggar case on the same day it was denied in the Allied Agents, Inc., case. Certain language in the opinion in Haggar Co. v. Helvering, supra, is significant. It is said: "Here the purpose of the statute is unmistakable. It is to allow the taxpayer to fix for itself the amount of the taxable base for purposes of computation of the capital stock tax, but with the proviso that the amount thus fixed for the first taxable year shall be accepted, with only such changes as the statute prescribes for the purpose of computing the capital stock and excess profits taxes in later years. Congress thus avoided the necessity of prescribing a formula for arriving at the actual value of capital for the purpose of computing excess profits taxes, which had been found productive of much litigation under earlier taxing acts * * *. At the same time it guarded against loss of revenue to the Government through understatements of capital, by providing for an increase in excess profits tax under § 216 ensuing from such understatements."

It is said that the court should not pass on the constitutionality of these statutes on this motion to dismiss. The only case cited by plaintiff on this point is Borden's Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281. That case does not support plaintiff's contention. To the contrary it points the necessity of construing a statute in its most favorable light. The District Court especially should be hesitant to declare a statute unconstitutional.

The motion granted.